**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY**
**RIGHTS CENTER**
1535 E 17th Street, Suite 110
Santa Ana, California 92705
t. 714-617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

**CAROL A. SOBEL** SBN 84483
**MONIQUE ALARCON** SBN 31165
**LAW OFFICE OF CAROL SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, California 90401
T. 310 393 3055
e. carolsobellaw@gmail.com
e. monique.alarcon8@gmail.com

**PAUL L. HOFFMAN** SBN 71244
**CATHERINE SWEETSER** SBN 271142
**COLLEEN M. MULLEN** SBN 299059
**SCHONBRUN, SEPLOW, HARRIS &**
**& HOFFMAN**
11543 W. Olympic Blvd.
Los Angeles, California 90064
t. 310 396 7031
e. hoffpaul@aol.com
e. csweetser@sshhlaw.com
e. cmullen@sshhlaw.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SHAWN CARROLL, LAKOTA ARNELL, and MARK JUHL, individually and on behalf of the class of similarly situated persons.<br><br>Plaintiffs,<br>v.<br><br>ORANGE COUNTY and ORANGE COUNTY SOCIAL SERVICE AGENCY;<br><br>Defendants. | Case No.:<br><br>Civil Rights Complaint<br><br>CLASS ACTION: FRCP 23(b)(2)<br><br>42 U.S.C. § 1983: Fourteenth Amendment;<br>California Constitution, Art. I, §7;<br>California Welfare & Institutions Code §§ 10000, 17000. |

1
CIVIL RIGHTS COMPLAINT

## JURISDICTION AND VENUE

1. This is an action for injunctive and declaratory relief and damages pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgement Act, 28 U.S.C. §§ 2201(a) and 2202. Jurisdiction to consider Plaintiffs' state law claims, arising from the same facts as their federal claims, is created by 28 U.S.C. §1367.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b) in that the events and conduct complained of herein all occurred in Orange County.

## PRELIMINARY STATEMENT

3. General Relief[1] is a public assistance program that provides the last – and lowest – support for the poorest individuals in the area. It is a state-mandated program operated by each County independently.

4. As described by the County: "General Relief (GR) is a cash assistance program funded by the County of Orange. It provides temporary cash aid to eligible indigent adult lawful residents who do not have custody of any minor children and do not qualify for Federal or State funded cash aid programs. The County classifies GR as "a loan ,,, which is to be repaid … from a Supplemental Security Income (SSI) retroactive award. The County may ask former recipients to repay GR from other money they have, but only after meeting the basic support needs of him or herself and his or her family." *See* ssa.ocgov.com/calfresh/general/whatis.

---

[1] In some counties, this is referred to as General Assistance or GA.

CIVIL RIGHTS COMPLAINT

5. Despite repeated lawsuits challenging the failure of the County to meet minimum mandated constitutional and state statutory standards, Defendants have again implemented policies and practices that deny and terminate aid to the most vulnerable populations based on improper grounds. In 2012, the County of Orange, through the Orange County Social Service Agency reached a settlement in *Mankinen v. County of Orange*, Case Number 30-2012-00572524-CU-MCCXC, a class-action lawsuit against the County and how it administered General Relief from August 2010 to December 2012.

6. The settlement required the County to make significant changes to how it administered General Relief. The County agreed to raise the monthly General Relief to $317 per month and also removed numerous impediments to accessing this critical emergency assistance. Significantly, the County agreed to substantially modify its sanctions policy that had resulted in disqualification from GR. Although the settlement provided for the County to require repayment of GR from other money a person receives, including Social Security, reimbursement could be required only after the GR recipient met their basic support needs.

7. This was not the first lawsuit against the County challenging the constitutional and statutory deficiencies in the administration of critical safety net programs, including General Relief. Just a year prior to the filing of *Maniken*, the County entered into a settlement in a class action alleging that the County was seriously delinquent in processing and administering public assistance applications. *See Joann Blackstar, et al. v. County of Orange, et al.*, USDC Case No. CV09-568 DSF (MLGx) (C.D. CA June 7, 2010).

8. Despite these earlier cases, the Defendants have now turned back to the previous unlawful denials of GR, deterring applicants from filing appeals, constructively blocking the aid paid pending an appeal of the denial, issuing retroactively dated termination notices, and ensuring that the lengthy appeal

hearing process leaves vulnerable individuals without benefits or other assistance for months before determinations are made.

9. Contrary to the Federal Regulations and the implementation of those regulations in other California counties, Defendant Orange County Social Service Agency now counts subsidized housing of any type as "in-kind income," without limit. To do this, the County determines the actual rental value of the space. If rent is being paid through an agency or service program, it is considered income. If the service provider owns the facility and does not charge monthly rent, or there is some other alternative arrangement, the value of he rent is not considered income. In Orange County, the alleged "income" is counts not only against the "housing" portion of General Relief, but all General Relief including the portions intended for basic subsistence necessities, such as utilities, food, transportation and clothes.

10. As a consequence, formerly homeless individuals are forced to choose between a roof over their head and food in their belly. Moreover, if General Relief is a person's only source of income, as it is for Plaintiffs, and the County disqualifies them because of the value of subsidized housing, eviction is unavoidable since the person experiencing homelessness does not have the financial resources to pay even the small contribution of rent required under the housing program. With the value of subsidized housing easily eclipsing the maximum monthly payment for General Relief of less than $400 a month, individuals such as the Plaintiff class are forced out of stable housing so that they can requalify for "Immediate Assistance" and, longer term, General Relief with assistance to apply for SSI.

## FACTS

11. The California Legislature mandated that every county in California "relieve and support all incompetent, poor, and indigent persons, and those incapacitated by age, disease, or accident … when those persons are not supported or relieved by their relatives or friends, by their own means, by state hospitals, or

4
CIVIL RIGHTS COMPLAINT

1 | by other state or private institutions. Welfare & Institutions Code §17000. The
2 | Board of Supervisors ("BOS") of each county is responsible for funding and
3 | implementing these programs. Section 17001 requires that the BOS, or the agency
4 | authorized by county charter, here the Orange County Social Services Agency,
5 | shall adopt standards of aid and care for the indigent and dependent poor of the
6 | county or city and county." *See also* http://www.cdss.ca.gov/General-Assistance.

12. Because this basic support is so critical to survival, as with all public benefits, the Legislature requires that the "aid shall be administered promptly and humanely" to encourage self-respect, self-reliance, and the desire to be useful to society. Welfare & Institutions Code §10000.

13. Orange County Social Services Agency General Relief Regulations Manual Section 1 defines income and in-kind income as "including but not limited to work or business activities, ownership in real property, a contribution from persons or organizations, pensions/retirement, interest or dividends." SSAGRM § 70.1. The County has also specified that "Monies that are legally obligated and otherwise directly payable to an individual, but which are diverted to a third party, shall be counted as income as if it were paid to the individual" SSAGRM § 70.2 subd. (1).

14. Plaintiffs are three individuals who were homeless and living in the Santa Ana riverbed in January 2018. Plaintiff Shawn Carroll is a named plaintiff in the action: *Orange County Catholic Worker, et al. v. County of Orange, et al.,* Case No. 18-cv-000155 DOC-KES (C.D. CA).

15. The County provides temporary placement to individuals such as Mr. Carroll through a number of service providers, including American Family Housing, Illuminations Foundation, Orange County Housing Authority, Santa Ana Housing Authority, and Anaheim Housing Authority. An individual placed in these facilities also is expected to receive a variety of supportive services including case management. As part of the case management, it is expected that an

application for Social Security Insurance (SSI) benefits will be made to create a stream on income for the disabled homeless individual. These programs all require that the homeless individual make some payment toward the rent. While SSI applications are pending, the payment can be a set amount or a set percentage of emergency cash aid or General Relief.

16. Individuals who are able-bodied are permitted to receive GR up to three months per year in Orange County, the minimum and less than most other counties. Those deemed unemployable are permitted to receive GR every month until they are either able to return to work, or receive alternative disability income.

17. Disabled individuals are required to re-certify their status from time to time. This is typically every three months. That means they must complete paperwork or meet with the case worker at GR and have their eligibility reconsidered. With the time it takes to receive SSI, most applicants would need to go through this 8-12 times before receiving SSI.

18. When a person is denied or terminated from GR, they are permitted to file an appeal. If they submit the appeal paperwork timely, they may request Aid Paid Pending. However, for GR recipients, Aid Paid Pending is limited to the certification period. In most cases, the termination is shortly before the end and the result is that Aid Paid Pending is approved for only a few days.

19. On information and belief after an appeal is requested, the GR office takes weeks or months to schedule a hearing. There is no official limit on the time to schedule a hearing. After the hearing the GR office issues a determination within 45 days. Hearings are typically held only one day per month. Therefore, in most cases, the time from termination of benefits to decision on appeal will be approximately 75-105 days, yet the aid paid pending will be closer to an average of 2-7 days. As a result, disabled individuals are left with no income and no assistance with SSI applications for multiple months before anyone decides if the termination was an error. This is tantamount to no aid paid pending appeal at all.

20. Defendants' policies and practices contravene fundamental principles of due process. "[T]ermination of aid pending 'resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits... to seek redress from the welfare bureaucracy.'" *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). Because GR is the last resort for many to "the means to obtain essential food, clothing, housing, and medical care[,]" … "only a pre-termination evidentiary hearing provides the recipient with procedural due process." *Id.* 263–64.

21. Moreover, policies that foster homelessness are against the purpose of the very statutes which mandate GR. *See e.g. Cleary v. County of Alameda*, 196 Cal.App.4th 826, 845 (2011). In this instance, Defendants run afoul of the statutory mandate to "relieve and support" indigent individuals, especially those with compound disabilities, by forcing them into such adverse conditions that they either refuse the type of aid provided or leave because they cannot tolerate its deprivations.... The policies at issue here run counter to Defendants' statutory duty to "encourage self-reliance" in a "humane" manner." *Robbins v. Superior Court*, 38 Cal.3d 199, 209-210 (1985).

## THE PARTIES

### PLAINTIFFS

22. Plaintiff **SHAWN CARROLL** is a formerly homeless person from the riverbed with compound disabilities. He is required to wear a portable defibrillator at all times. The monitor is connected to and transmits digital information on his heart rhythm to his medical provider, allowing the hospital to send emergency electronic signals if his heart should stop. He has been determined to be unemployable as a result of his disabilities.

23. The County placed Mr. Carroll as a client of the Illumination Foundation for enrollment in Anaheim's CHIPP program. Through this program, Illumination Foundation can rent an apartment for Mr. Carroll for up to two years

with case management. During that time, the Illumination Foundation is tasked with assisting Mr. Carroll to increase his income, prepare to maintain stable housing, and make a long-term housing plan.

24. Under the CHIPP program, Mr. Carroll is obligated to pay for his utilities, pay $60 toward his rent, and pay for his other needs including clothes, transportation, food, and toiletries. If he fails to make the rent co-payment, he faces eviction from the placement. As a result, he would return to homelessness with the added hurdle of an eviction on his record, making future landlords unlikely to accept him as a tenant.

25. As required by County procedures, Mr. Carroll provided proof to his GR case worker establishing that his actual cost of living met or exceeded the potential grant amount. He also provided a letter from Illumination Foundation stating that, as a part of the CHIPP program, IF pays a the largest share of his rent but he is obligated to pay a portion of the monthly rent payment and the utility payment.

26. Before the end of his last eligibility period in July 2018, Mr. Carroll went to the GR office to complete recertification. That same day, he was abruptly and immediately terminated for an alleged probation violation. He requested aid paid pending appeal of this decision. After first being informed that aid pending appeal was not allowed, a manager considered and granted an exception for partial aid paid for August 2018.

27. Mr. Carroll's attorney then provided evidence that the termination for a purported violation of probation was in error. OCSSA offered to reinstate Mr. Carroll's GR when certification was complete on the condition Mr. Carroll withdraw his appeal. Mr. Carroll agreed and immediately was served with a new termination notice, back-dated to the date of the termination based on the erroneous assertion of a probation violation.

28. The Notice of Action issued to Plaintiff said that Carroll had a non-exempt income of $1355.00, an amount equal to the exact amount that Illumination Foundation pays for his rent.  However, nothing in the Notice of Action informed Carroll that his rental subsidy was counted as income. Rather, the Notice of Action directs Carroll to section 70.2 and 80.3 of the SSAGRM.

29. This time, Mr. Carroll was informed he would not receive back pay, or future benefits.  Mr. Caroll then initiated a new appeal.  A hearing was scheduled for November 15, 2018.  Despite repeated requests for the full file, less than 24 hours before the hearing, Mr. Carroll was provided with the termination notice and the letter that he submitted to the GR office regarding his housing placement, but not the rest of his file. When he again requested the file and a day to review it prior to a hearing, he was informed the next was available hearing date was December 11, 2018 and was again denied aid paid pending his appeal. At the hearing on December 11, 2018, the GR staff representative abruptly left the hearing and declined to return to finish. The hearing officer stated that the hearing would be suspended and he would schedule a time to continue the hearing.

30. From October 2018 through February 4, 2019 Mr. Carroll was unable to receive an adequate hearing of his appeal from the retroactive notice of July 2018 termination based on counting the full rent paid by IF as in-kind income.  Mr. Carroll was forced to borrow money from other sources or sell his meager belongings to exist.  Then, without notice or explanation, he received the backpay on February 4, 2019 and was again issued yet another termination notice. He again requested a hearing and aid paid pending.

31. Left again with no benefits and no means to pay for basic necessities, Mr. Carroll is waiting for a hearing.  Currently, he is scheduled for a hearing in mid-April, after which the GR office has 45 days to issue a decision.  In the meantime, Mr. Carroll has no income.

32. During that time, Mr. Carroll has received a notice to quit from his landlord, had his utilities terminated, and struggled to meet his most basic needs.

He has obtained alternative assistance to apply for SSI and his application is now pending.

33. Plaintiff **LAKOTA ARNELL** is a former resident of the Santa Ana riverbed. Both she and her partner have been assessed by the County as unemployable and, therefore, exempt from the work rules for GR. She and her partner received GR and CalFresh when they were placed at the Baymont Motel and enrolled in the Full Service Partnership Program.

34. When the contract with the Baymont ended in or about August, 2018, Arnell and her partner were forced to live in their vehicle. Without a regular address at which to receive their mail, they missed a notice of recertification for GR and also missed notices of appointments for SSI applications. They continued to pursue support and, at the end of December 2018, were placed in Permanent and Supportive Housing ("PSH"). After obtaining stable housing, both Lakota Arnell and her partner again focused on approval for SSI.

35. They have no other source of income. Because SSI can take months, if not years, to be approved, Arnell reapplied for GR as head of household. When they reported that they were now in PSH, the caseworker informed Arnell that the value of the HUD housing subsidy that covers PSH is considered income and, because of the value of the HUD voucher, completely disqualifies receipt of any amount of GR. The caseworker advised Arnell to withdraw the application rather than be denied but did not advise Arnell of any right to appeal the decision.

36. Arnell's partner is currently enrolled in Telecare as an individual with severe and persistent mental illness ("SPMI"). Telecare currently pays the utility bill based on the SPMI status. No other public benefits are paid to them to cover rent, food, or other basic necessities.

37. Plaintiff **MARK JUHL** is a former riverbed resident with compound medical and resulting mobility disabilities. He has been deemed unemployable for

the basis of qualifying for GR. He has submitted an application for SSI, but has not yet received a determination.

38. Mr. Juhl spent months at Bridges and was then approved for placement at American Family Housing, a path to a housing voucher with case management. Initially, Mr. Juhl did not have a mailing address, even though he was at Bridges. Because he was not receiving his monthly GR, he went to the GR office to ask about the income and was informed that he was disqualified because he received a housing voucher, which is counted as income against his monthly GR benefits. Mr. Juhl was advised by the staff at the GR office that he could appeal, but it would make no difference in the outcome, so he should not bother filing an appeal.

39. Mr. Juhl has no other income and no indication of when and if he will qualify for monthly SSI payments. In the interim, he is left without any means to pay for basic necessities, including food, clothing and transportation. Because he suffers from diabetes, maintaining good nutrition on a regular schedule is critical to his health.

**DEFENDANTS**

40. Defendant **ORANGE COUNTY** is a local government entity, duly authorized and formed under the laws of the State of California, with the capacity to sue and be sued. One subdivision of the County is the Orange County Social Services Agency

41. Defendant **ORANGE COUNTY SOCIAL SERVICES AGENCY ("SSA")** is the agency responsible for carrying out the mandate of the state Legislature and administering the General Relief programs in the Defendant County.

**CLASS ACTION ALLEGATIONS**

42. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). Plaintiffs seek to represent a class of persons who

receive General Relief in the County and who have been terminated from the program based on the value of supportive housing. Specifically, the class is defined as: all persons who are now and/or since at least January 1, 2018, have been applicants to, or participants in, the GR program and who have been denied all GR benefits, terminated in full due to the imputed value of housing services or discouraged from filing appeals from these decisions.

43. The requirements of Rule 23(a) are met in this action in that the class is so numerous that joinder of all members is impracticable. According the County SSA website, more than 4,000 individuals received General Relief in the 2017/18 funding year. On information and belief, Plaintiffs allege that well more than 100 of these individuals were in some form of supportive housing that puts them at risk of termination of their General Relief based on the County's challenged policy. Moreover, the members of the class are ever changing as new individuals are placed in supportive housing and thereby qualify as members of the putative class.

44. All of the members of the class share common issues of law and fact in that they are subject to denial of, and termination from, legally mandated services for which they are otherwise eligible in violation of federal and state laws despite.

45. The claims of the individual Plaintiffs are typical of the claims of the class they represent.

46. Plaintiffs will fairly and adequately protect the interests of the class they seek to represent. There is no known conflict between the individual plaintiffs and the putative class members.

47. Plaintiffs are represented by experienced counsel who will adequately represent the interests of the class.

48. Defendants have acted and continue to act on grounds generally applicable to the class as a whole, thereby making injunctive and declaratory relief appropriate for all of the class.

49. At the same time, the County failed to invest in infrastructure to transition people from General Relief to SSI. It failed to partner with the SSI office to ensure timely processing of homeless applications. It failed to assist in gathering the documents necessary. And instead, it left individuals on GR to find other assistance in transitioning to SSI.

50. From start to finish, and SSI application often takes years. Almost all applications are denied at the first application stage and not fully considered until the appeal process begins. If former riverbed residents want assistance with this process from the General Relief office, they are now required to move out of their housing first as they do not qualify for GR, and therefore do not qualify for SSI assistance, while in subsidized housing.

## INJUNCTIVE RELIEF

51. As set forth in the preceding paragraphs, an actual controversy has arisen and now exists between the parties. Plaintiffs contend that Defendants are violating their rights under the Constitution and the laws of the United States and California. Defendants dispute this contention and maintain that they have acted in a lawful manner in the administration of the General Relief program. Consequently, a declaration from the Court that Plaintiffs' rights have been violated is both necessary and appropriate.

52. Defendants' failure to comply with the requirements of federal and state law has and will continue to result in irreparable harm to Plaintiffs. There is no plain, adequate, of complete remedy at law to redress the wrongs described herein. Plaintiffs seek injunctive relief restraining Defendants from engaging the unlawful and unconstitutional policies and practices described herein.

# FIRST CAUSE OF ACTION
## Right To Due Process Of Law; 42 U.S.C. § 1983
## 14th Amendment and Article I, §7(a)

53. Plaintiffs incorporate by reference and thereby reallege the facts set forth in the preceding paragraphs as though fully set forth hereat.

54. Defendants, acting under color of law, developed, implemented and maintained policies and practices regarding the qualification for General Relief that violate 7 U.S.C. §§ 2020(e)(3) and 2020(e)(9). These policies and practices violate Plaintiffs' due process rights in two ways.

55. Defendants policy of termination of all GR benefits without aid pending appeal and without a pre-termination hearing violates fundamental due process.

56. Defendants' calculation of in-kind income to terminate eligibility for General Relief violates Plaintiffs' right not to be deprived of property or liberty without due process of law.

# SECOND CAUSE OF ACTION
## Violation of Welfare and Institutions Code §§ 10000, 17000

57. Plaintiffs incorporate by reference and thereby reallege the facts set forth in the preceding paragraphs as though fully set forth hereat.

58. Defendants, acting under color of law, developed, implemented and maintained policies and practices regarding the qualification for General Relief that deprive Plaintiffs of statutory rights under California Welfare and Institutions Code §§ 17000 and 10000.

59. Defendants' automatic, immediate and complete termination of GR benefits based on the imputed value of in-kind income necessary to maintain shelter is in violation of Plaintiffs' right not to be deprived of property or liberty without due process of law under the 14th Amendment to the United States Constitution and California Constitution, Article I, §7(a).

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray as follows:

1. For a temporary restraining order, preliminary injunction, and permanent injunction, enjoining and restraining Defendants from discontinuing individuals from General Relief without adequate due process including aid paid pending appeal, a hearing in a reasonable time, and restricting Defendants from imputing value from non-monetary assistance of other supportive programs;

2. For a declaratory judgment that Defendants' policies, practices, and conduct as alleged herein violate Plaintiffs' rights under the United States and California constitutions;

3. For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiffs' statutory rights under the California Welfare & Institutions Code;

4. For an Order that Plaintiffs may maintain this action as a class action pursuant to F.R.Civ.P. 23(b)(2);

5. For an order directing Defendant to reinstate and repay all aid pending appeal to the Plaintiff class for any amounts directly related to disqualification and denial based on imputed value of non-monetary assistance;

6. For damages in an amount to be determined according to proof;

7. For costs of suit and attorney fees as provided by law;

8. For such other relief as the Court deems just and proper.

Dated: April 1, 2019   Respectfully submitted,
ELDER LAW & DISABILITY RIGHTS CENTER
LAW OFFICE OF CAROL A. SOBEL
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN

By: /s/   Carol A. Sobel
CAROL A. SOBEL
Attorneys for Plaintiffs