**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E 17th Street
Santa Ana, California 92705
t. 714-617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

**CAROL A. SOBEL  SBN 84483**
**LAW OFFICE OF CAROL SOBEL**
**CAROL A. SOBEL** SBN 84483
1158 26th Street, #552
Santa Monica, California 90403
t. 310-393-3055
e. carolsobellaw@gmail.com

**PAUL L. HOFFMAN** SBN 71244
**SCHONBRUN, SEPLOW, HARRIS & HOFFMAN**
9415 Culver Boulevard, #115
Culver City, California 90230
t. 310-396-0731
e. hoffpaul@aol.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SHAWN CARROLL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ORANGE COUNTY, et al.,<br><br>    Defendants. | CASE NO. 8:19-cv-00614-DOC-DFM<br><br>**MOTION FOR FINAL APPROVAL OF CERTIFICATION OF 23(b)(2) AND AWARD OF ATTORNEY FEES TO PLAINTIFFS; MEMORANDUM; DECLARATIONS OF ALLISON GREENBERG AND GOLNAZ ZANDIEH**<br><br>Date:   November 21, 2022<br>Time:   8:30 a.m.<br>Ctrm:   10A (Hon. David O. Carter)<br><br>Action filed: April 1, 2019 |

Plaintiffs file the Motion for Final Approval of Certification of Settlement Class pursuant to Federal Rules of Civil Procedure Rules 23(b)(2) and 23(b)(3). The motion is made pursuant to the Court's Order granting preliminary approval to the class certification and settlement and setting a Fairness Hearing for November 21, 2022.

The motion is based on the Memorandum of Points and Authorities and all declarations and exhibits filed in support of the motion, as well as any additional argument of evidence that may be presented prior to and at the hearing on this matter.

Dated: October 24, 2022         ELDER LAW and DISABILITY RIGHTS CENTER

                                                 LAW OFFICE OF CAROL A. SOBEL

                                                 By:      /x/    Carol A. Sobel              .

                                                          CAROL A. SOBEL

                                                          ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

I. INTRODUCTION AND BACKGROUND .......................................... 1
   A. Description of the Claims ........................................................... 1
   B. Case Proceedings ........................................................................ 1

II. CERTIFICATION OF A CLASS PURSUANT TO F.R.Civ.P. 23(B)(2) and (3) ... 3
   A. The Requirements of Fed. Rules of Civ. Procedure 23(B)(2) ..... 5
   B. The Requirements of Fed. Rules of Civ. Procedure 23(B)(3) ..... 4
   C. The Requirements of Fed. Rules of Civ. Procedure 23(B)(3) Supports Certification of the Class and Final Approval ............. 5

III. ATTORNEYS FEES AND COSTS AWARD ...................................... 6
   A. The Lodestar Review of the Fee Request ................................... 6
   B. Analysis of Factors Setting Attorneys' Fees Awards in Class Actions ... 7
      1. complex issues and substantial risk were raised ................... 7
      2. management of the case ......................................................... 7
      3. risks of non-payment ............................................................. 8
      4. effort expended by Plaintiffs' counsel .................................... 9
      5. result obtained for the class .................................................... 9
      6. counsels' experience ............................................................... 9
      7. reaction of the class ................................................................ 10
         a. the number of timely claims ............................................. 11
         b. late claims filed by otherwise eligible persons ................ 11
         c. rhe Court's discretion to accept late claims ..................... 11
         d. opt-outs and objections ...................................................... 12

IV. PLAINTIFFS' ATTORNEYS' FEE REQUST IS A SUBSTANTIALLY REDUCED LODESTAR ... 13
   A. Plaintiffs' Lodestar .................................................................... 13
   B. Counsel's Hourly Rates are Reasonsble ................................... 13
   C. Counsel's Hours are Reasonable ............................................... 14
   D. Plaintiffs' Costs are Reasonable ................................................ 15

V. CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**:

*Beaty v. BET Holdings, Inc.*, 222 F.3d 607 (9th Cir. 2000) 14
*Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978) 12
*Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985) 11
*Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012) 14
*Curtiss-Wright Corp v. Helfand*, 687 F.3d 171 (7th Cir. 1982) 11
*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) 6
*In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Ca. 2005) 7
*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001) 11,12
*In re Quintus Sec. Litig.*, 148 F.Supp.2d 967 (N.D.Cal.2001). 7
*In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291 (9th Cir. 1994). 6
*Jordan v. Multnomah Cty.*, 815 F.2d 1258 (9th Cir. 1987) 14
*Marshall v. Northrop Grunman Corp.*, Case No. 16-cv-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Ca. 2020) 7
*Moore v. James H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) 14
g
*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) 17
*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) 6
*Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319 (D. Nev. 2014) 7
*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) 6
*Thornberry v. Delta Air Lines, Inc.*, 626 F.2d 1250 (9th Cir. 1982) 15
*Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. July 21, 2008) 13
*Zients v. LaMorte*, 459 F.2d 628 (2d Cir. 1972) 15

**STATE CASES:**

*Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740 (2002) 14
*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) 14
*Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480 (2016) 7

**FEDERAL STATUTES:**

Fed. R. Civ. Proc. 23(a) 5
Fed. Rules of Civ. Proc. 23(b)(2) 2,3,4
Fed. Rules of Civ. Proc. 23(b)(3) 2,

| | |
|---|---|
| Fed. Rules of Civ. Proc. 23(e) | 5 |
| 7 U.S.C. § 2020(e)(3) | 1 |
| 7 U.S.C. §2020(3)(9) | 1 |
| 42 U.S.C. § 1988 | 10 |
| 57 U.S.C. § 2020(e)(9) | 5 |

**STATE STATUTES:**

| | |
|---|---|
| Welfare and Institutions Code §17000 | 1 |
| Welfare and Institutions Code §10000 | 1 |

## I. INTRODUCTION AND BACKGROUND

This motion seeks final approval of the settlement in this matter, including the claims submitted by putative class members, objections and opt-outs, if any, and approval of the attorney fees and costs for attorneys for the class attorneys. Rule 23(e) of the Federal Rules of Civil Procedure provides that class settlement may occur only with the court's approval, upon notice to the class, a fairness hearing, and the court's finding that the settlement is fair, reasonable, and adequate. Fed. Rules of Civ. Proc. 23(e). A class settlement may be approved only after a hearing at which class members may object. *Id.* By this motion, the parties seek final approval of the class settlement following the Fairness Hearing now set for November 21, 2022.

### A. Description of the Claims

The action arises out of Defendant's implementation of regulations for General Relief eligibility that improperly valued supportive housing payments as income, thereby disqualifying or terminating General Relief ("GR") benefits for otherwise qualified persons. Plaintiffs alleged that Defendants violated the rights of the class members when County employees applied an interpretation of "income" that was inconsistent with and impermissible under federal law. Specifically, the Complaint alleges Defendants erroneously defined "income" and "in-kind income" to include rent paid through an agency or service program in violation of federal regulations pursuant to 7 U.S.C. §§ 2020(e)(3) and 2020(e)(9), as well as statutory rights under California Welfare and Institutions Code §§17000 and 10000, and on this basis terminated or denied GR to the class and denied aid pending appeal.

### B. Case Proceedings

The above-captioned action was filed on April 1, 2019 in the District Court for the Central District of California as a class action for injunctive relief. The named plaintiffs are three individuals who sought subsidized housing after being forced to leave the Santa Ana Riverbed encampment that was the subject of *Orange County*

*Catholic Worker, et al. v. County of Orange, et al.*¸ Case No. 18-cv-00155 DOC – KES. Each plaintiff was wrongly denied or terminated from GR benefits during the time period described in the Notice of Settlement previously approved by the Court.

Plaintiffs originally filed this action only as an injunctive relief class pursuant to Fed. Rules of Civ. Proc. 23(b)(2).  Concurrently with the Motion for Preliminary Approval, Plaintiffs requested, and the Court approved, the filing of an Amended Complaint, adding a damages class under Fed. Rules of Civ. Proc. 23(b)(3). [Dkt. 23]

After the Complaint was filed, the parties engaged in extensive negotiations to develop revised regulations for the consideration of supportive housing with as a qualification for General Relief.  After reaching agreement on a proposed settlement, the parties filed a Motion for Preliminary Approval and submitted as an exhibit to the Motion the Settlement Agreement as well as the revised regulations instituted by the Defendants as agreed to by the parties.  [Dkt. 29-2]

On August 8, 2022, the Court entered an order, approving the unopposed motion for preliminary approval of the class settlement and setting deadlines for filing claims.  [Dkt. 30]  The Court set a Fairness Hearing on final approval for November 21, 2022. *Id.*  The terms of the settlement include payment to each qualified claimant of all General Relief payments improperly denied or withheld during the applicable time period, subject to an offset or repayment of Social Security benefits, if any, during the relevant time period.

In the Order Granting Preliminary Approval, the total amount to be paid to the class was estimated at approximately $414,000.  Dkt. 30, ¶11.  The First Amended Complaint estimated that there were as many as 400 eligible claimants.  Dkt. 23, ¶43.  Plaintiffs now believe that the number of eligible claimants was less than 300 persons because the County implemented the revised regulations once they were agreed upon and did not wait for the Court to give preliminary approval of the settlement.

The Court's Order Granting Preliminary Approval also acknowledged the Settlement included payment of $150,000 to the Client Trust Account of the Elder

Law and Disability Rights Center for fees and costs incurred by counsel for the Plaintiffs. The attorney fees and costs to be paid to Plaintiffs' attorneys are separate from the class fund and in no way diminish the amounts to eligible class members. In addition, there is no incentive award to the class representatives, no residual fund and no costs of administration. Upon final approval by the Court, all funds will be distributed to qualified claimants based solely on the calculation of what each individual was entitled to and not on a pro-rata share of the potential class fund. The damages to eligible class members is to be paid by transferring funds to their government-issued electronic debit cards.

## II. CERTIFICATION OF A CLASS PURSUANT TO F.R.CIV.P. 23(B)(2) and (3)

**A. The Requirements of F.R.Civ.P. 23(B)(2)**

The Injunctive Relief class in this action sought to change the way Defendants' policies for determining eligibility for General Relief and the payment of "aid-pending" while an applicant appealed an adverse decision. The class received full relief when the County agreed to and did revise its regulations to be consistent with applicable federal regulations on this issue.

The Court must consider whether "(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

The following factors apply in determining that a class may be given final approval pursuant to Fed. R. Civ. P. 23(b)(2):

    (A)    the class members' interests in maintaining or defending separate actions on these issues are outweighed by the interests of the class in the benefit from the Settlement;

    (B)    the Court and the parties are unaware of any other litigation by or against class members concerning this controversy; and,

    (C)    concentrating the litigation of these claims before the Court is desirable to facilitate a consistent and regional solution to a significant issue affecting multiple communities;

Pursuant to the terms of the Settlement and Federal Rules of Civil Procedure 23(b)(2), the parties stipulated to, and requested the Court approve, the certification of a Class of Plaintiffs as follows:

> "Damages Class" is defined as all persons who were qualified for but were improperly denied General Relief (GR) based on the improper definition of income and "in-kind" income, including aid pending appeal, between July 2018 and the present. The injunctive relief and damages classes are identical and both are referenced hereinafter as Damages Class.

*See* Settlement Agreement at p. 5 [Dkt. 29-1, filed August 5, 2022].

The harm to Plaintiffs in this instance rose from the same policy applied to all claimants for General Relief, thus the class has shown that the defendant acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole. Fed.R.Civ.P. 23(b)(2).

**B. The Requirements of F.R.Civ.P. 23(B)(3)**

Rule 23(e) also requires parties seeking class settlement approval to file a statement of the terms of the agreement. As noted, Plaintiffs concurrently filed (1) the Settlement Agreement as Exhibit A to the Motion for Preliminary Approval ("Settlement Agreement"). [Dkt. 29-1] The parties also filed a copy of the revised regulations as an exhibit to the Settlement Agreement. [Dkt. 29-2]

The parties provided a description of the manner in which notice would be given to all class members who would be bound by the settlement, as required by Rule 23(e); (2) a proposed notice to the class; (3) a proposed claim form; and (4) requested the Court set a date for a fairness hearing if the Court found the settlement fair, reasonable, and adequate. The Court approved the Notice and Claim Form in the order granting preliminary approval of the class settlement.

### C. The Requirements of Fed. Rule of Civ. Procedure 23 Supports Certification of the Class and Final Approval In This Instance

Federal Rules of Civil Procedure 23 allows a court to certify a matter as a class action where "[o]ne or more members of a class … sue … as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a).

If each of the elements of Rule 23(a) is satisfied, the Court next considers whether and what type of class may be certified. The Court must evaluate whether "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b). The Court made this determination in granting preliminary approval and no subsequent facts support a different conclusion but that all of the conditions necessary for certification under Rule 23(a) have been met and final approval of the class is warranted.

## III. ATTORNEYS FEES AND COSTS AWARD

For purposes of this motion, it is undisputed that Plaintiffs are the prevailing party. Plaintiffs have filed a concurrent motion for fees and costs. The agreed upon fees and costs of $150,000 is substantially discounted below what Plaintiffs could have sought in a fee motion as the prevailing parties in a contested motion. Class Counsel seeks cost reimbursement solely for $500 to cover the filing fee and the expense of service and courtesy copies to the Court.

The remainder of the funds to be paid to Plaintiff's counsel is compensation for statutory fees and certain costs pursuant to subject to Court approval. There are no fees or costs for Class Administration, all of which were absorbed by the Defendants.

### A. The Lodestar Review Of The Fee Request

The requested fees and costs are reasonable in light of the total sought and the work necessitated to prosecute this action through the final approval of the Class settlement. In the Ninth Circuit, courts generally have discretion to apply either a percentage of the fund or a lodestar approach in compensating class counsel. Where no available statutory attorneys' fee is available or in this case a separate payment by Defendants, the lodestar or percentage method comes from a common fund but either method can be used. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994).

However, where a statutory fee is available such as here under §§1988 and 52.1(h), a fee award would be proper regardless of the damages class fund amount. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, …[and] the amount of such attorney's fees"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("'lodestar method' appropriate in class actions brought under fee-shifting statutes "); *Laffitte v. Robert*

*Half Internat. Inc.*, 1 Cal. 5th 480, 489, 376 P.3d 672, 676 (2016) ("Class action litigation can result in an attorney fee award pursuant to a statutory fee shifting provision or through the common fund doctrine"); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1326 (D. Nev. 2014) ("differing purposes behind statutory fee shifting and the common fund doctrine confirm that the lodestar method is the appropriate manner for calculating reasonable attorney's fees" in a class action where statutory fees are available).

### B. ANALYSIS OF THE FACTORS IN SETTING ATTORNEYS' FEE AWARDS IN CLASS ACTIONS.

While not required by the Circuit, the following factors are often considered when deciding the reasonableness of class action fees to counsel; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar. *See, e.g., Marshall v. Northrop Grunman Corp.,* 2020 U.S. Dist. LEXIS 177056, *18-19 (C.D. Cal. 2020), citing *In re Heritage Bond Litigation*, 2005 WL 1594403 at 18; *see also, In re Quintus Sec. Litig.*, 148 F.Supp.2d 967, 973-74 (N.D.Cal.2001).

#### 1. Complex Issues and Substantial Risk Were Raised

This case involves complex issues of constitutional and statutory law: i.e., how in-kind housing services are to be valued to determine an indigent person's eligibility for General Relief payments from the County.

#### 2. The Management of the Case

Plaintiffs filed this action in April 2019 as an injunctive relief case only. After the case was filed, the parties entered into extensive discussions to revise the County's regulations. At the same time, Plaintiffs' counsel participated in multiple hearings challenging denials/terminations of GR benefits to persons known to them while settlement discussions were ongoing. This was important to do to ensure that a

vulnerable population receive GR as soon as possible and not have to wait for the outcome of the class action.

Once agreement was reached on the revised regulations, Plaintiffs filed an amended complaint, adding a damages class. In addition, Plaintiffs filed a motion for preliminary approval of class certification. After the Court set the dates for a final Fairness Hearing, Plaintiff's counsel spent extensive time going to various service providers to ensure that putative class members learned about the settlement and to answer questions they might have about eligibility. Plaintiffs also filed this motion for final approval, including approval of attorney fees to Plaintiffs' counsel.

Based on their extensive experience as some of the primary attorneys engaged in litigation on behalf of unhoused or marginally housed individuals in Orange County in cases before this Court, Plaintiffs' counsel was aware that putative class members often have no phone or internet access, may not have a fixed address and, especially for those who are unhoused, move frequently in response to availability of services and enforcement actions. Despite these challenges, Counsel took deliberate steps to respond to and stay in contact with putative class members. The details of Plaintiffs' counsel's outreach to inform the putative class of the settlement is set forth in the concurrently filed Declaration of Allison Greenberg.

### 3. The Risks of Non-payment Were Substantial

Although the County agreed at an early stage to engage in settlement discussions, there was substantial risk of non-payment facing Plaintiffs' counsel when they began this litigation. While the County had the resources to pay a judgment, Plaintiffs still had to establish that the underlying conduct was illegal and engage with Defendants on the revision and implementation of applicable regulations. Moreover, seeking substantial amounts of money from government entities always carries risks of politics entering into the equation.

As previously discussed, the fees plaintiffs are requesting will cover only a portion of their lodestar, The actual percentage is approximately 60 percent of the

total fees incurred. It bears emphasis that the fees are entirely separate from the class fund payments to individuals so the fees in no way impact the amount of damages each qualified class member receives.

### 4. The Effort Expended by Counsel

Counsel litigated this case for more than three years. During that time, as reflected in the fee document submitted by the Elder Law Center, counsel engaged in many appeals of initial decisions to deny or terminate benefits. Also, as noted above, because of the transient nature of an indigent plaintiff class, many of whom were unhoused and dislocated by the pandemic, counsel spent extensive time on individual contact and communication with class members to ensure the ability to reach them concerning a settlement. The attention of Plaintiffs' counsel to the specific needs of the putative class members produced an exceptional result.

### 5. The Result Obtained for the Class

The class members are indigent individuals, many of whom are people experiencing homelessness, with little financial resources. Many, including the named plaintiffs were previously residents of the Santa Ana riverbed. Each class member will receive all General Relief payments that they were entitled to receive during the applicable time, subject to repayment of Social Security, other government benefits, or other sources of income Defendants are permitted to consider in determining eligibility for General Relief. The calculation for each member of the class is being done by the County Defendants. The amount each class member receives is dependent upon their specific facts. There is no separate class fund created for these payments and no residual fund. In sum, the financial terms of the settlement are favorable to class members.

### 6. Counsels' Experience

Class Counsel is an experienced litigator in the fields of civil rights and class actions. Ms. Sobel is a well-known civil rights lawyers, dealing with class action litigation for people experiencing homelessness. In support of the motion for

preliminary approval and concurrent class certification, extensive information regarding the qualifications of class counsel was submitted to the Court. In addition to Ms. Sobel, attorney Brooke Weitzman served as co-counsel in this matter. Ms. Weitzman has been co-counsel on several cases now before this Court, advocating for the rights of low-income and no-income individuals. The Court is in a position to assess for itself the skill level of plaintiffs' counsel.

### 7. The Reaction of the Class

Defendants provided Plaintiffs with a chart, summarizing the timely claims submitted, the late claims submitted, the number deemed qualified in each category and the number of timely and late claims remaining to be reviewed to determine eligibility.[1] A true and correct copy of the chart provided to Plaintiffs' counsel by Defendants is attached to the Declaration of Carol Sobel at Exhibit 1.

To date, Defendants have determined that 98 timely claimants and 2 late claimant meet the class definition. Sobel Decl. Ex. 1. Based on the Claim Forms reviewed to date by Defendants, the current rate of participation is approximately 36 percent of the potential class members. Plaintiffs submit that this is a good result given the transitory nature of the class and the heightened dislocation related to the COVID pandemic.

The parties did extensive outreach to notify persons of the settlement and the opportunity to file a class claim. Notices and Claim Forms were mailed to the last known address of those listed in the County database of individuals who were denied GR or withdrew their application due to being over the income cap.[2] Defendants then did an additional mailing to those for whom updated addresses were found.

---

[1] A final tally will be submitted to the Court at least one week prior to the hearing on final approval set for November 21, 2022.

[2] The parties agreed to mail to the last known address of a wider group of people than the number originally estimated to be in the class to ensure as broad outreach as possible and to catch any applicants who might have been wrongly denied GR after the revised regulations went into effect.

Hundreds more hard copies were delivered to various shelters and other locations where services are provided to unhoused and marginally housed persons. In addition, Claim Forms were distributed to a wide range of individuals involved in working with the target population. The outreach efforts are described more fully in the concurrently filed declarations of Allison Greenberg, of the Elder Law & Disability Rights Center and Deputy County Counsel Golnaz Zandieh.

### a. the number of claims submitted

As of the filing of this motion, Defendants reviewed almost 1000 claims filed. A total of 920 forms were received, of which 117 were duplicates. The parties previously estimated the number of persons in the class at approximately 280 people. As of this date, Defendants calculate that 686 timely claims were received. Of that number, 98 were accepted as valid class members. Defendants have 107 timely claims still to review. Golnaz Decl.

### b. consideration of late claims from otherwise eligible persons

A total of 116 late claims were received. Of the late claims reviewed so far, Defendants found two were eligible for the GR payments. Defendants are still reviewing 66 late claims for eligibility.

### c. the Court's discretion to accept late claims

The parties recognize that the decision on inclusion or rejection of late claims is within the Court's equitable discretion. "[C]ourts overseeing class settlement agreements have discretion within their equitable power to permit the filing of late claims but only where the equities, on balance, favor the new claimants. *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985). Such power is consistent with the court's "traditional equitable function" of "allocat[ing] an inadequate fund among competing complainants" and its duty to protect the members of the settlement class. *Curtiss-Wright Corp*, 687 F.2d at 174. *See also, In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("A primary use of [the court's] equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class

members. ... Integral to this balancing, however, is the court's responsibility and inherent power and duty to protect unnamed, but interested persons.") (quotation omitted), even where the relief sought was foreclosed by the terms of the parties' agreement. *See, e.g., Zients*, 459 F.2d at 630 (rejecting lower court's strict adherence to settlement terms as "unwarranted" and "narrow view of the court's role in Fed. Rule of Civ Proc. 23"); *see also, Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978) (permitting reversion of funds pursuant to court's equitable power, despite non-reversion clause in the settlement agreement, where result would be inequitable otherwise).

In this instance, the awards to class members who filed timely claims would not be impacted by permitting eligible late claimants to participate in the settlement since the payment to each class member is based on the amount of funds not paid to them based on the erroneous interpretation of the calculation of in-kind housing on eligibility for General Relief. Simply put, because the payments to class members is not a pro-rata share of a finite class fund, there is no harm to those who filed timely claims. That may well be the determinative factor for the Court in considering which late filed claims, if any, from otherwise eligible claimants will be allowed. Without the Court's involvement, these Class Members will not receive funds previously improperly denied to them. *See, e.g., In re Orthopedic Bone Screw Prod.*, 246 F.3d at 329 ("While there is no question that in the distribution of a large class action settlement fund, a cutoff date is essential and at some point the matter must be terminated, application of this principle must not be so rigid as to preclude recovery by a deserving claimant.") (internal quotation omitted)).

### c. Opt-outs and Objections

No objections to the settlement were received. One opt-out was received; however, the individual provided a written explanation that the opt-out was based on the belief that the individual was not eligible to participate in the settlement.

## IV. PLAINTIFFS' ATTORNEYS' FEE REQUEST IN THIS CASE IS A SUBSTANTIALLY REDUCED LODESTAR.

### A. Plaintiffs' Lodestar

As previously stated, the claim for attorneys' fees in this case is greatly discounted below what would have been sought absent a settlement agreement setting a cap on fees. The claim is based on the applicable statutory fee standards.

The requested fees are based on the lodestar and independent of any funds to be paid to the qualifying class members, requiring a more extensive review by the Court. See, e.g., *Victoria Secret Stores, LLC*, 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008) and cases cited therein. Plaintiffs' counsel submitted detailed timesheets. The table of rates and supporting documentation are set out in the concurrently filed Sobel Declaration. Sobel Decl. ¶ 20. Based on these hours and rates, the lodestar would be $249,330.00, excluding all time expected to be spent finalizing the claims and preparing for the hearing on final approval of the class settlement. *Id.*

The costs are minimal in this instance, less than $1,000.00. Plaintiffs seek only the filing fee and the costs of service of the summons and complaint.

### B. Counsel's Hourly Rates Are Reasonable

The lodestar is based on the following market rates: Carol Sobel (44 years' experience) at $1150 an hour; Brooke Weitzman (8 years' experience) at $650 an hour; Weston Rowland (1 year of experience) at $330 an hour; Weston Rowland (law graduate) at $300 an hour, Allison Greenberg (2022 law graduate) at $300 an hour; Jacob Berezin (law graduate) at $300 an hour, Sarah Dawley (law graduate at $300 an hour), Sarah Dawley (1 year of experience) at $330 an hour, and Allyson Myers (law student) at $175 an hour.

These requested hourly rates are reasonable for attorneys of comparable skill, experience and reputation. Ms. Sobel's qualifications were before the Court in the motion to approve her appointment as class counsel. To support the reasonableness of their rates, Plaintiffs submit several recent fee awards in the Central District legal

market. They are entitled to their requested rates if they are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (Cal. Ct. App. 2002); *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("requested rates [should be] in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation") (citation omitted). As this Court has held, generally, for a "fee award to be reasonable, it must be based on current, rather than historic, hourly rates." *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 (C.D. Cal. 2012) (citing *Missouri v. Jenkins*).

### C. Counsel's Hours Are Reasonable

Counsel's hours are reasonable. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker"); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) ("Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee"); *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (same) (internal quotations omitted). The hours incurred here "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery ... ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted).

Detailed time records are provided as an exhibit to the Declaration of Carol Sobel. While in an ordinary fee motion counsel would be expected to exercise line by line billing judgment or provide an across-the-board discount to account for possible duplication, unrecoverable time on clerical tasks, or otherwise non-billable work, the considerable reduction in fees by the settlement agreement makes such an approach unnecessary. Nonetheless, and as set forth in the Sobel Declaration at ¶21

, counsel excluded all time incurred by two employees at the Elder Law Center because their time appears to involve a significant percentage of clerical tasks. In addition, the time incurred by Weston Rowland was reduced by approximately 30 percent to account for time spent on research that was not used in the litigation. Even with these discounts, Plaintiffs' attorney hours exceed the settlement agreement cap.

### D. Plaintiffs' Costs are Reasonable

Both California and federal fee-shifting statutes allow reimbursement of litigation expenses that "are normally charged to a fee-paying client in the course of providing legal services." *Thornberry v. Delta Air Lines, Inc.,* 626 F.2d 1250, 1244 (9th Cir. 1982); judgment vacated on other grounds, 461 U.S. 932 (1983). Plaintiffs include only filing fees. The costs total $450, which is included in the total payment of $150,000.00 agreed to in the settlement.

### III. CONCLUSION

The motion for final approval meets the requirements of Fed. Rules of Civil Procedure 23 and should be granted by the Court.

ELDER LAW AND DISABILITY RIGHT CENTER
LAW OFFICE OF CAROL A. SOBEL

Dated: Oct. 24, 2022           /s/   Carol A. Sobel                    .
                        By: CAROL A. SOBEL
                        Attorneys for Plaintiffs

- 15 -